Opinion
 

 COMPTON, J.
 

 In a petition filed in the Juvenile Court of Los Angeles County pursuant to Welfare and Institutions Code section 602, Reginald B., a minor, was alleged to have committed the crimes of murder and attempted robbery. After a hearing, the juvenile court found the allegations of the petition to be true, declared Reginald to be a ward of the court and committed him to the California Youth Authority. This appeal is taken from the order of commitment. We affirm the order.
 

 The crimes were committed on August 22, 1976, and defendant’s involvement was that of an aider and abettor to two other persons.
 

 Donald Prince, a police officer for the City of Lynwood, was assigned to investigate the case. On September 1, 1976, he received information implicating this minor in the crimes. Without attempting to procure an arrest warrant, Officer Prince began searching for the minor. On the morning of September 3, 1976, accompanied by another officer, he proceeded to the minor’s residence.
 

 The officers knocked at the door of the residence. A boy who appeared to be 14 or 15 years of age answered. When asked if Reginald was home the boy replied that he was not. When asked if Reginald lived there the boy answered affirmatively. The officers then asked if the mother was home and the boy answered that she was. Officer Prince then asked if he could come in and talk to her and the boy said “Yes.” The boy left the door open and retired to a back bedroom of the apartment. Officer Prince stepped a foot or two inside the door and was approached by Reginald’s mother, He asked if Reginald was home and the mother pointed to the minor who was then standing in the living room and said “That is Reggie.”
 

 
 *402
 
 Officer Prince then informed the minor and his mother that he was being taken into custody on suspicion of robbery and murder. Officer Prince informed the mother where the minor would be and gave her his business card.
 

 During the drive to the police station Officer Prince informed the minor of his constitutional rights by orally giving him the
 
 Miranda
 
 warning. (384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) When asked if he understood his rights, the minor replied “Yes.” The officer then told him that he would not question him further until they arrived at the station. No further questions were asked during the drive.
 

 At the station the minor spent about one hour and fifteen minutes in the booking tank and the waiting room. During this period the officers attended to other police business and sought to schedule an interview room in which to question the minor. The minor testified that while he was in the waiting room Officer Prince asked him if he “wanted to talk about it” and he replied “I told him I didn’t have nothing to talk about because I didn’t do it.”
 

 Subsequently Officer Prince read the
 
 Miranda
 
 rights to the minor from a standard form used by the Lynwood police. The officer read aloud, pointing to each word as he read. The officer then asked the minor if he understood each of his rights, and received an affirmative reply. The minor then circled and initialed the word “yes” at the appropriate place on the
 
 Miranda
 
 form. Officer Prince then asked, “Do you want to talk to me about this case?” The minor circled and initialed the word “yes” on the form. The minor was then asked if he wanted a lawyer present. He circled and initialed the word “no.” The minor then signed a statement declaring that he wanted to discuss the charges against him without having a lawyer present.
 

 The minor’s taped confession was played in court. In that confession he admitted to consorting with two other youths during the time in which one of the other youths allegedly committed the crimes.
 

 The first contention on appeal is that the trial court erred in failing to suppress the confession on the ground that it was tainted by a prior illegal arrest. Specifically, it is argued that the warrantless arrest inside the minor’s home was illegal under the rule established in
 
 People
 
 v.
 
 Ramey,
 
 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333].
 

 
 *403
 
 In the
 
 Ramey
 
 case the California Supreme Court declared that “warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances.”
 
 (People
 
 v.
 
 Ramey, id.,
 
 at p. 276.) The court in
 
 Ramey
 
 also stated at page 275 that: “[I]n the absence of a bona fide emergency,
 
 or consent to enter,
 
 police action in seizing the individual in the home must be preceded by the judicial authorization of an arrest warrant.” (Italics added.)
 

 The People urge that in this case Officer Prince obtained a valid consent to enter the residence and that the warrantless entiy and subsequent arrest came within a recognized exception to the general rule enunciated in
 
 Ramey.
 

 Officer Prince was expressly given consent to enter the residence by an individual who appeared to be a resident and a member of the family. A police entry into a residence is proper when the circumstances justify a good faith reasonable belief that a person on the premises has the authority to and does consent to such entry.
 
 (People
 
 v.
 
 Gorg,
 
 45 Cal.2d 776 [291 P.2d 469];
 
 People
 
 v.
 
 Smith,
 
 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222];
 
 People
 
 v.
 
 Daniels,
 
 16 Cal.App.3d 36 [93 Cal.Rptr. 628].)
 

 Beyond that the underlying thrust of
 
 Ramey
 
 is to limit
 
 searches
 
 of residences in conjunction with an arrest made therein. The teaching of
 
 Ramey
 
 is that a search of a residence without a search warrant, except in certain limited circumstances, may not be justified on the basis that it was incident to an arrest unless that arrest was based upon a valid warrant. The seizure of physical evidence as a result of an unreasonable search of a residence is per se an exploitation of improper police conduct for the reason that the officers’ intrusion into the residence places them in a position to obtain evidence which would not otherwise be available to them.
 

 In analyzing the relationship between an allegedly invalid arrest and a subsequent confession the focus is quite different. The admissibility of a confession depends upon the totality of the circumstances existing at the time the confession was obtained.
 
 (People
 
 v.
 
 Sanchez,
 
 70 Cal.2d 562 [75 Cal.Rptr. 642, 451 P.2d 74];
 
 People
 
 v.
 
 Hutchings,
 
 31 Cal.App.3d 16 [106 Cal.Rptr. 905].) The invalidity of an antecedent arrest becomes a factor in that totality of circumstances to be weighed along with the other circumstances in determining whether the confession was a product of free will and an intelligent waiver of the defendant’s Fifth Amendment rights.
 

 
 *404
 
 Certainly under some circumstances an arrest may be so fraught with illegality that it creates an aura of coerciveness which would taint any confession which ensued. On the other hand a technically invalid arrest does not automatically suggest that any ensuing confession was the result of exploitation of police misconduct even though the burden is on the prosecution to purge any taint. Each case must rest on its own facts.
 
 (Wong Sun
 
 v.
 
 United States,
 
 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407];
 
 Brown
 
 v.
 
 Illinois,
 
 422 U.S. 590 [45 L.Ed.2d 416, 96 S.Ct. 2254].)
 

 In short, where the evidence sought to be introduced consists of physical evidence seized by the police the inquiry will terminate upon establishing that the seizure was based upon an arrest of an individual inside his residence without a warrant and in the absence of exigent circumstances or consent. On the other hand where the issue is the admissibility of a confession obtained after an arrest which could, under the broad language of
 
 Ramey,
 
 be characterized as invalid the inquiry is not so precipitously terminated.
 

 In the latter situation the totality of the circumstances must be examined in the light of adherence to the dictates of
 
 Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; the temporal proximity of the arrest and the confession, any intervening circumstances and the nature of the police misconduct which rendered the arrest invalid. (See
 
 People
 
 v.
 
 DeVaughn,
 
 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872].)
 

 Here the officers’ conduct was not intrusive and no search was conducted. The location of the physical arrest had no effect on the evidence, i.e., the confession which was offered against defendant. Any technical impropriety in arresting the minor in his home rather than on the street or elsewhere was certainly attenuated by the officers’ scrupulous adherence to the dictates of
 
 Miranda.
 

 It is next urged that the minor did not adequately waive his
 
 Miranda
 
 rights and therefore his confession was not voluntary. On that issue he contends that because he initially denied killing anyone his subsequent willingness to confess demonstrated a confused state of mind inconsistent with the “rational intellect and a free will” necessary to a voluntaiy confession.
 
 (Blackburn
 
 v.
 
 Alabama,
 
 361 U.S. 199, 208 [4 L.Ed.2d 242, 249, 80 S.Ct. 274].)
 

 Although a denial of guilt is obviously the antithesis of a confession, we fail to see how a decision to confess to a crime, after a prior denial of
 
 *405
 
 guilt, necessarily exhibits such confusion as to render the confession involuntary. In determining whether a confession is voluntarily given, the totality of the circumstances surrounding the confession must be taken into account.
 
 (People
 
 v.
 
 Sanchez,
 
 70 Cal.2d 562, 572 [75 Cal.Rptr. 642, 451 P.2d 74].) We also note that a minor can effectively waive his constitutional rights.
 
 (People
 
 v.
 
 Lara,
 
 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202].)
 

 The fact that a denial of guilt was later changed to an admission thereof on the facts of this case is consistent with a change of heart by the minor. The decision to confess cannot be of itself an indicium of involuntariness in the complete absence of coercive circumstances.
 

 It is also significant that the minor’s criminal liability is based on a theory of vicarious liability. Thus when he stated that he had not killed anyone he may well have conceived his statement to be true from a nonlegal perspective. His subsequent confession did not alter the tenor of his prior statement.
 

 The fact that the minor waived his rights and made a voluntary confession was clearly demonstrated by a preponderance of the evidence. (Pe
 
 ople
 
 v.
 
 Chen,
 
 37 Cal.App.3d 1046, 1049 [112 Cal.Rptr. 894].)
 

 The minor’s final contention is that he was deprived of the effective assistance of counsel because his counsel at the hearing did not question whether the police had probable cause to make an arrest. This contention is devoid of merit. We have already indicated that in our opinion the circumstances of the arrest were of no consequence. Further it appears that the officers did have probable cause to arrest and that defense counsel realized it. For that reason counsel focused his attack on the fact that the arrest was made without a warrant.
 

 Defense counsel’s decision not to question the existence of probable cause was a strategic decision based upon a correct understanding of the law and the facts of the case. His conduct demonstrated a high degree of competence rather than a lack thereof.
 

 The order is affirmed.
 

 Roth, P. J., and Beach, J., concurred.