[Crim. No. 11908. Third Dist. Sept. 16, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
MARSHALL DOUGLAS POORE, Defendant and Appellant.

COUNSEL

Stephen L. Sawyer, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Linda A. Cabatic, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

REGAN, J.—Defendant appeals from the judgment entered after the trial court convicted him in count 1 of attempted robbery (Pen. Code, §§ 664, 211) with a firearm use finding (Pen. Code, § 12022.5), and in counts 2 and 3 of false imprisonment. (Pen. Code, § 236.)[1] █ Defendant contends the trial court erroneously denied his motion to quash incriminating statements he made to a police officer, thereby violating his Sixth Amendment right to the assistance of counsel.

---

[1]Firearm use allegations charged in counts 2 and 3 were found not to be true.

The incriminating statements defendant sought to quash related to his participation in the attempted robbery of a Jack-in-the-Box restaurant in Woodland on April 29, 1981. A recitation of the facts of the crime are not necessary to resolve the issue presented here.

Glenn Perry became a police officer for the City of Woodland on April 20, 1981.[2] His assignment was to seek information and collect evidence regarding narcotic and drug activities and stolen properties. Perry operated from an undercover apartment in a Woodland apartment complex where "there was supposed to be a lot of [drug] activity." Only seven police officers were aware of Perry's assignment and no specific person was designated as a suspect.

Perry first encountered defendant April 29, 1981, by the apartment complex swimming pool, where they engaged in general conversation. Perry next saw defendant at the Woodland City Park, where he interested defendant in what was purported to be a stolen camera.

On May 21, 1981, Perry drove into the parking lot of the apartment complex where he observed defendant and one John Beck driving out. When defendant and Beck indicated they were just at Perry's apartment, Perry invited them inside. Defendant and Beck had not previously been inside Perry's apartment.

Once inside, general conversation ensued in which defendant expressed his interest in purchasing the camera. Defendant then mentioned he had been to court a few days earlier on an attempted robbery charge. He told Perry and Beck that he had committed the offense and that they were the only people who knew of his guilt. He admitted wearing a ski mask, blue coveralls and pointing a gun in a few people's faces, but stated he did not take the $140 offered him by his victims. He further stated he was going to hire someone to threaten witnesses. Perry then asked him what type of establishment he had robbed and defendant answered it was the Jack-in-the-Box restaurant in Woodland. Shortly thereafter defendant and Beck left Perry's apartment, whereupon Perry contacted the Woodland Police Department and learned of the robbery and defendant's surname.

It was stipulated at trial the district attorney was aware of the undercover activities two months prior to April 20, 1981. However, Perry tes-

---

[2]Perry had previously served five and one-half years as an officer with the San Leandro Police Department.

tified that prior to defendant's statements he was not aware of any pending criminal charges against defendant, nor was he aware of defendant's surname.

On approximately April 30, 1981, defendant was interviewed by Officer Stroski as a suspect in the Jack-in-the-Box robbery and at that time asserted his right to an attorney. Defendant claims his subsequent statements to Perry were obtained in violation of this right.

The trial court ruled that all statements made by defendant up to the time Perry questioned him about the robbery were voluntary and admissible and that those made after the questioning violated "the restrictions against interrogation as a police agent after assertion of *Miranda* rights and right of counsel."

Relying on *Massiah v. United States* (1964) 377 U.S. 201 [12 L.Ed. 2d 246, 84 S.Ct. 1199] and *United States v. Henry* (1980) 447 U.S. 264 [65 L.Ed.2d 115, 100 S.Ct. 2183], defendant argues that all the statements he made to Officer Perry violated his Sixth Amendment right to counsel, not just those made after Perry initiated questioning. We disagree.

*Massiah* held that government agents violated defendant's Sixth Amendment right to counsel when they "deliberately elicited" incriminating information from a defendant by secretly recording his conversations with an informer. The court noted (at p. 206 [12 L.Ed.2d 254]) that if the Sixth Amendment "'. . . is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse. . . .'" In *Henry* the court ruled the Sixth Amendment right to counsel is violated where the government "intentionally creat[es] a situation likely to induce . . . incriminating statements without the assistance of counsel," e.g., by providing as a cellmate an undisclosed but paid government informant. (447 U.S. at p. 274 [65 L.Ed.2d at pp. 124-125].) However, neither *Massiah* nor *Henry* prohibit the introduction of voluntary, spontaneous statements not elicited by government action. (*Id.*, at p. 276 [65 L.Ed.2d at p. 125] (conc. opn. Powell, J.); see also *People v. McGowan* (1980) 105 Cal.App.3d 997, 1004 [166 Cal.Rptr. 725].)

There was no Sixth Amendment violation here. Although both the district attorney and Woodland Police Department knew of defendant's pending robbery charge, Perry did not. Perry did not arrange the meet-

ing with defendant nor did he initiate the conversation with respect to the robbery. Moreover, Perry could not be expected to be aware of defendant's assertion of right to counsel by his passing reference to a recent court appearance. In short, it is clear Perry's receipt of incriminating statements about the robbery was entirely fortuitous and that defendant's unsolicited statements were given voluntarily. (See *People v. Thompson* (1980) 27 Cal.3d 303, 327-328 [165 Cal.Rptr. 289, 611 P.2d 883]; *People v. Superior Court* (*Zolnay*) (1975) 15 Cal.3d 729 [125 Cal.Rptr. 798, 542 P.2d 1390].) There is simply no way the challenged police action here can be characterized as a deliberate attempt to elicit incriminating statements (either directly or indirectly) from defendant and therefore an impermissible interference with his constitutional right to counsel within the ambit of *Henry* and *Massiah*.

The judgment is affirmed.

Puglia, P. J., and Evans, J., concurred.