[Crim. No. 42390. Second Dist., Div. One. Dec. 28, 1982.]

In re FRANK C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
FRANK C., Defendant and Appellant.

**COUNSEL**

Glen H. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Mark A. Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, J.**—The minor appeals from order sustaining petition finding to be true the charges of one count of murder (count I [J. Garcia]), four counts of robbery (count II [J. Garcia], count IV [N. Garcia], count VI [Loera], count VIII [Gonzalez]) with enhancements (§ 12022, subd. (b), Pen. Code) and three counts of attempted murder (count III [N. Garcia], count V [Loera], count VII [Gonzalez]), and fixing the offenses on all counts as felonies in the first degree; and order of disposition.

### FACTS

About 2:30 a.m. a car containing Loera, Gonzalez, N. Garcia and J. Garcia ran out of gas near a corner; Loera walked across the street to a telephone booth, Gonzalez waited outside the car and the Garcias were asleep in the back seat. Before Loera reached the phone booth two men approached him, demanded money and beat him up; the men bent his foot and pulled off one of his boots which was later found at the scene.

Meanwhile the minor and another male approached the car; the minor went to the passenger side and broke the front door window with an iron pipe; the other pointed a knife at Gonzalez and demanded money; Gonzalez gave him his money and pushed him, and the assailant slit his shirt with a knife; a black man holding a stick was behind the car apparently watching for police. During this time the minor talked to J. Garcia then cut N. Garcia and stabbed J. Garcia while they were still in the car; the two men who had attacked Loera came to the car and J. Garcia was dragged out of the car and repeatedly stabbed; N. Garcia got out to defend his brother and was stabbed again and cut several times on both hands, back and temple area; after N. Garcia saw all four men jump on J. Garcia he ran away and, looking back, saw five people going through J. Garcia's pockets. As a result of the stabbings J. Garcia died.

### EVIDENCE RELATING TO CONFESSION

We view the evidence in the light most favorable to respondent and presume in support of the order of the juvenile court the existence of every fact

it could reasonably deduce from the evidence. (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].)

A week after the incident and at 8:15 a.m. at his residence, the minor was arrested and taken to the station where he was placed in an interview room; about 8:45 a.m. Officer Lovato read to him his constitutional rights verbatim from a field officer's notebook; asked if he understood the rights read to him, the minor answered in the affirmative; asked if he wished to give up the right to remain silent the minor said "I want an attorney. I don't want to say anything." Immediately Officer Lovato ceased questioning the minor, removed him from the interview room and placed him next door in a detention room because the interview room did not have a lock on the door and, in addition, is used by other detectives. The detention room had a bench, and a window in the door; in the same area Officer Lovato sat at his desk preparing reports. Approximately one hour later he looked up and saw the minor wave or motion to him with his hands; Officer Lovato approached him and opened the door, and the minor immediately said, "I remember, I was at Tiny's wall. I had blood on my hands. I remember a knife and Limpy and Guy were there too. We were going to rob them." Officer Lovato took the minor out of the detention room into the interview room, then asked him "What did you want to say to me?" whereupon the minor "continued by giving me more information on what his participation was in the incident, and at that time I wrote down what he told me." The minor signed the statement prepared by Officer Lovato.[1]

## Issue

The appellate issue revolves around the mixed argument that the minor had not the capacity to understand the meaning of the *Miranda* admonitions and the effect of waiving his rights, and that his confession was not voluntary. We perceive no violation of the principles of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

## Discussion

The admissibility of a confession depends upon the totality of the circumstances existing at the time the confession was obtained. (*People* v. *Sanchez* (1969) 70 Cal.2d 562, 572 [75 Cal.Rptr. 642, 451 P.2d 74].) A minor can effectively waive his constitutional rights (*People* v. *Lara* (1967) 67 Cal.2d

---

[1]The minor said that Guy also had a knife; Limpy and Guy walked up to a person standing in the street and he approached the driver's side of the car and told someone inside to open the door; the door was locked and he went to the passenger side, broke the window and opened the door; the person seated on the passenger side struck him and he hit him back; when the person got out of the car he asked him for money then he was hit in the face; the person in the back seat got out and he thought he also hit him in the face; he had a knife in his hand but remembered fighting them and not stabbing them; he ran to Limpy's house where he fell asleep; that afternoon he, Guy and Limpy got together; Guy discussed how he would get rid of the knife and he (the minor) washed the blood off his pants.

365, 390-391 [62 Cal.Rptr. 586, 432 P.2d 202]), but age, intelligence, education and ability to comprehend the meaning and effect of his confession are factors in that totality of circumstances to be weighed along with other circumstances in determining whether the confession was a product of free will and an intelligent waiver of the minor's Fifth Amendment rights. (Pp. 385-387.) Appellant complains that the juvenile court did not "closely scrutinize" those facts surrounding his confession; but as we are required to do, we have examined the uncontradicted facts " 'to determine independently whether the trial court's conclusion of voluntariness was properly found.' [Citation.]" (*People* v. *Thompson* (1980) 27 Cal.3d 303, 327 [165 Cal.Rptr. 289, 611 P.2d 883]; *People* v. *Jimenez* (1978) 21 Cal.3d 595, 598 [147 Cal.Rptr. 172, 580 P.2d 672].)

■ The minor did not testify and presented no evidence in his behalf, thus there is nothing in the record to indicate that he was not of normal intelligence or that he did not understand the admonitions and the effect of the waiver of his rights. Officer Lovato advised the minor of his *Miranda* rights immediately upon arriving at the station; as to each he asked him if he understood that which he had explained to him and the minor answered "Yes." Asked by the officer if he wished to give up the right to remain silent, the minor said "I want an attorney. I don't want to say anything" whereupon Officer Lovato immediately ceased all questioning. The record establishes that the minor well knew his rights and understood them and initially asserted the very rights he now on appeal claims he failed to understand.

The trial court found that "the minor was advised of his rights and elected to exercise those rights at one point subsequently by virtue of the minor's own action, he called the officer to the area in which he was being detained, and then began to make these statements. [¶] We're talking about a time period of within about one hour when his rights were given, and he appeared to understand them and refused to waive them and followed through by making these statements. [¶] The Court is satisfied that that is a waiver of his rights and it's significant for him without going through a ritual." This conclusion is amply supported by the evidence. The minor was an experienced 15-year-old at the time of his arrest; as the court stated at the time of disposition, "In addition to being home on probation, the minor has been arrested innumerable times in the last couple of years, actually starting at age 11 for a variety of these offenses." The minor's experience from his numerous contacts with police and familiarity with juvenile court procedure is another circumstance tending to show that the minor possessed the capacity required to assert his rights, subsequently waive them and make a voluntary confession. (*People* v. *Lara* (1967) 67 Cal.2d 365, 385 [62 Cal.Rptr. 586, 432 P.2d 202]; *In re Charles P.* (1982) 134 Cal.App.3d 768, 772 [184 Cal.Rptr. 707] [a "worldly 12-year-old" who "was on probation and . . . had a prior experience with the juvenile court"]; *In re Steven C.* (1970) 9 Cal.App.3d 255, 268 [88 Cal.Rptr. 97] [a "16-year-old minor with a

good deal of prior police contact"].) At no time did the 15-year-old minor's actions or words suggest any lack of understanding of his rights, and the evidence shows that initially he knowingly invoked them.

In *In re Reginald B.* (1977) 71 Cal.App.3d 398 [139 Cal.Rptr. 465], after being advised of his *Miranda* rights, the minor later at the station denied culpability; later he was read his *Miranda* rights from a standard form and indicated he understood them and wished to talk about the case; asked if he wanted a lawyer the minor said he did not, then confessed. As here, there was no evidence indicating he did not understand his rights but the minor contended "that because he initially denied killing anyone his subsequent willingness to confess demonstrated a confused state of mind inconsistent with the 'rational intellect and free will' necessary to a voluntary confession." (P. 404.) The contention was rejected, and the court upheld the minor's "change of heart." In the circumstances at bench, the fact that an hour later the assertion of his rights changed to a waiver thereof and an admission of guilt "is consistent with a change of heart by the minor. The decision to confess cannot be of itself an indicium of involuntariness in the complete absence of coercive circumstances." (*In re Reginald B., supra,* 71 Cal.App.3d 398, 405.) Absent here are any coercive circumstances surrounding the confession.

When the minor motioned to Officer Lovato and the officer opened the door without any questioning or prompting or conversation, the minor immediately volunteered the first of his incriminating statements. The evidence establishes that these statements were spontaneous and self-initiated by the minor. As stated in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], "There is no requirement that police stop a person . . . who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment . . . ." (P. 478 [16 L.Ed.2d p. 726].)

Notwithstanding an initial assertion of the right to remain silent, a statement subsequently made by a suspect in custody is admissible if it was volunteered upon his own initiative and was not made in response to interrogation by police. (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 172 [127 Cal.Rptr. 467, 545 P.2d 843]; *People* v. *Knight* (1980) 111 Cal.App.3d 201, 204-205 [168 Cal.Rptr. 421]; *People* v. *Johnson* (1971) 20 Cal.App.3d 168, 175 [97 Cal.Rptr. 332].) The minor's unsolicited statements were given voluntarily (*People* v. *Poore* (1982) 135 Cal.App.3d 882, 886 [185 Cal.Rptr. 615]); the officer had no conversation with him before he made them. His statements were entirely self-motivated and voluntary. (*People* v. *Thompson* (1980) 27 Cal.3d 303, 327 [165 Cal.Rptr. 289, 611 P.2d 883].) There is simply no way to challenge Officer Lovato's actions in relation to the minor as an attempt to elicit incriminating statements from him either directly or indirectly.

The second statement made by the minor only minutes later in the interview room and reduced to writing was a continuation of the first initiated entirely and volunteered by the minor; so intent was he on making his confession, his statements seem even not to be in response to the officer's neutral inquiry ("What did you want to talk to me about?"). In any case the officer's inquiry was invited by the minor's conduct of motioning for the officer and making his first incriminating statement when the officer opened the door to the detention room, and his second statement was volunteered after that neutral inquiry and a continuation of the first statement. The conduct of Officer Lovato was neither intimidating nor accusatory nor did it appear in any manner designed to elicit incriminating statements. (*People* v. *Treloar* (1966) 64 Cal.2d 141, 147 [49 Cal.Rptr. 100, 410 P.2d 620]; *People* v. *Tomita* (1968) 260 Cal.App.2d 88, 92 [66 Cal.Rptr. 739].) Although he did not once again admonish the minor of his constitutional rights, on the record before us there is no reason to assume the minor did not understand them when first given to him or he had already forgotten the admonitions of an hour before or that he had invoked his rights or he did not understand he had already invoked them or he did not understand he was waiving them.

Appellant's challenge to the admissibility of his confession on the ground he had not the capacity to waive his rights is without substance; all of the evidence points to a knowing and intelligent waiver. Likewise, the record discloses no coercive circumstances surrounding his incriminating statements; clearly the confession is the product of a free will and voluntarily made. He seeks to justify his claim that he was intimidated and frightened into making a confession by relying on evidence that the detention room measures seven by twelve feet, he was not informed an attorney would be appointed to represent him, no effort was made to notify his mother or relative that he was in custody and he was left in the detention room for an hour without food or drink, all of which he says constituted "sufficient pressure to induce" him to give whatever information the officer desired. This argument, of course, is based on sheer speculation. The minor has told us nothing; he did not take the stand and no evidence was offered on his behalf. Further, an hour without food and drink in midmorning in a detention room with a bench and window in view of the officer working at a desk hardly can be classified as a coercive circumstance. No effort was made to obtain an attorney because there was no intention on the part of police to, and they did not, interrogate him. The minor did not ask for his mother or a relative, and when asked by Officer Lovato if he wanted to make a telephone call, the minor said he did not; in any case we can only assume that someone in his home knew he had been arrested because it was there at 8:15 a.m. he was taken into custody. Nothing in the evidence suggests that he was exposed to any form of coercion, threats, or promises of any kind, trickery or intimidation, or that he was questioned or prompted by Officer Lovato or anyone else to change his mind. It is evident that he not only had the capacity to understand his rights

but knew and understood them when initially he invoked them and later waived them by freely and voluntarily initiating a spontaneous statement to Officer Lovato and thereafter following through with his confession.

The orders are affirmed.

Spencer, P. J., and Hanson (Thaxton), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.