[No. A020524. First Dist., Div. Four. Nov. 4, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDRICK STEVEN TRUDELL et al., Defendants and Appellants.

COUNSEL

Thomas W. Perley and Jaime Alcabes, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—Appellants Fredrick Steven Trudell (Trudell) and Robert Carls Huie (Huie) were charged in an eight-count information with two counts of kidnaping (Pen. Code, § 207[1]), three counts of forcible rape (§ 261, subd. (2)), two counts of oral copulation (§ 288a), and one count of burglary (§ 459). It was further alleged that in commission of the sex offenses the appellants acted in concert (§ 264.1), and that in commission of the kidnap and sex offenses Trudell personally used a firearm (§ 12022.5) and Huie was armed (§ 12022, subd. (a)). Following denial of their motions to suppress evidence appellants pled guilty as charged. The court sentenced

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Trudell to 21 years in state prison and sentenced Huie to 20 years and 8 months in prison.

Huie's appointed counsel has filed an opening brief which raises no specific issues. Huie has filed a supplemental opening brief in which he contends that the court erred in denying his motion to suppress evidence and in enhancing his sentence for firearm use. He also asserts incompetence of appellate counsel. Trudell contends that the court erred in denying his motion to suppress evidence. We affirm the judgments as to both appellants.

I

FACTS

The charges against appellants arose out of three separate incidents: The kidnaping and rape of Kay S. on January 21, 1982; the burglary of a jewelry store on January 23, 1982; and the kidnaping and rape of Traci B. on March 22, 1982. Appellants were arrested following the Traci B. incident and their motions to suppress challenged the legality of those arrests. Because appellants pled guilty, the facts of the offenses are unnecessary to resolution of the issues on appeal and we need consider only the facts relating to the arrests.

The evidence at the suppression hearing showed that between 7 and 8 a.m. on March 22, 1982, 14-year-old Traci B. was walking toward the bus stop on her way to school when she was kidnaped at gunpoint and forcibly raped. A T-shirt with Trudell's name on it was found at the scene. At about 1:30 that afternoon, Detective James A. McClellan was assigned to investigate the case. McClellan had the names and descriptions of the two suspects, a description of their car, and the address of one suspect, Huie. McClellan went to Huie's residence to conduct a surveillance. About 3 p.m. he observed Huie drive away in an automobile. Huie's physical description and clothing matched those of one of the suspects and his automobile resembled the automobile used in the offense.

McClellan followed Huie to an Alpha Beta store in Newark and parked next to him. As Huie walked to the back of his car, McClellan approached him. He identified himself as a police officer and requested Huie's identification. He then informed Huie that he wanted to talk with him about his activities that morning. McClellan advised Huie of his constitutional rights. At McClellan's request, Huie granted permission to search his vehicle for weapons. A visual search revealed a green fatigue jacket and a dark blue jacket with a security patch on the shoulder, clothing matching that worn by the perpetrators. Within 10 minutes of his detention, Huie confessed,

implicating Trudell as well. Huie stated that Trudell was staying at his brother's residence on Hoyt Street in Fremont.

Officer Gary Duthler and another officer proceeded to the Hoyt Street residence to conduct a surveillance. At approximately 5:40 p.m. a car pulled up in front of the residence and a male fitting Trudell's description got out and entered the house. Duthler stopped the vehicle. The driver, Trudell's mother, stated that it was Trudell who had just entered the Hoyt Street residence.

Duthler returned to the residence intending to arrest Trudell. Once there, he was informed by radio that Trudell was on the telephone to the police department, asking if he was wanted. Duthler advised the radio technician to tell Trudell to step outside the residence. Trudell told the technician that he would do so.

When Trudell did not leave the residence after about five minutes, Duthler asked the radio technician to attempt to contact him and ask him to come out, but she was unable to complete the call. Trudell was seen pulling down the window shades of the house.

Officer Duthler approached the front door, knocked and called out for Trudell. Receiving no response, he returned to his automobile and used a public announcement system to call to Trudell. He "announced [he] was a police officer . . . . [He] called him out by name and ordered him out from the residence, and when he came out to keep his hands in plain view." After three or four announcements, appellant came out of the residence and was placed under arrest. When appellant exited the residence at least five officers were at the scene. Some of the officers had their weapons drawn.

## II

### DISCUSSION

*Huie's Appeal*

A. *Motion to Suppress*

Relying on *Dunaway* v. *New York* (1978) 442 U.S. 200 [60 L.Ed.2d 824, 99 S.Ct. 2248] and *People* v. *Davis* (1981) 29 Cal.3d 814 [176 Cal.Rptr. 521, 633 P.2d 186], Huie argues that he was arrested without probable cause. ■ Because Huie's confession provided ample probable cause for his arrest, we take his argument to mean that Officer McClellan lacked

probable cause to interrogate him, the argument Huie's trial counsel made at the suppression hearing below. This contention is meritless.

In *Dunaway* the police, without probable cause, took the defendant into custody, transported him to the police station, and detained him there for interrogation. (*Dunaway* v. *New York, supra,* 442 U.S. at pp. 206-207 [60 L.Ed.2d at pp. 831-832].) The court held that for Fourth Amendment purposes this seizure was an "arrest" requiring probable cause. (*Id.,* at p. 216 [60 L.Ed.2d at p. 838].) In *People* v. *Davis, supra,* 29 Cal.3d 814, our Supreme Court distinguished *Dunaway* on grounds that defendant Davis had voluntarily gone to the police station for questioning in response to a telephone request. (*Davis, supra,* at pp. 820-822.)

The *Dunaway* principle is inapplicable to the present case. Appellant was not taken into custody and transported, but was questioned in the public place "where he was found." (See *Dunaway* v. *New York, supra,* 442 U.S. at p. 212 [60 L.Ed.2d at p. 836].) Officer McClellan unquestionably had the reasonable suspicion necessary to justify Huie's detention. (*In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957].) His questioning of Huie, lasting approximately 10 minutes before Huie confessed, was a valid concomitant of the investigative stop. (See *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 881-882 [45 L.Ed.2d 607, 617, 95 S.Ct. 2574]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 34 [20 L.Ed.2d 889, 913, 88 S.Ct. 1868] [conc. opn. of White, J.]; see also *People* v. *Harris* (1975) 15 Cal.3d 384, 389 (1b) [124 Cal.Rptr. 536]; *People* v. *Paz* (1981) 118 Cal.App.3d 332, 334-335 [173 Cal.Rptr. 272].) Denial of Huie's motion to suppress was not error.

B. *Sentence Enhancement*

Huie was sentenced to twenty years and eight months in state prison, as follows:

Count V (Traci B. rape in concert)—the aggravated term of nine years (§ 264.1) plus one year for being armed (§ 12022, subd. (a));

Count III (Kay S. rape in concert)—the aggravated term of nine years (§ 264.1) plus one year for being armed (§ 12022, subd. (a)), to run consecutive to the term imposed on count V;

Count VIII (second degree burglary)—one-third the midterm of two years or eight months (§§ 18, 461, subd. 2), to run consecutive to the terms imposed on counts V and III.

Relying on *People* v. *Mota* (1981) 115 Cal.App.3d 227 [171 Cal.Rptr. 212], Huie contends that the court erred in adding an arming enhancement to his sentence on the rape counts. *Mota* is inapposite. The case holds that the 1980 amendment to subdivision (a) of section 1170.1, authorizing enhancement of subordinate terms for robbery with firearm use, cannot be applied to enhance the sentence of a defendant whose offenses predated the amendment. (*Id.*, at p. 235.) Huie's sentence was enhanced pursuant to subdivision (i) of section 1170.1 (formerly subd. (h)), which was enacted in 1979 (Stats. 1979, ch. 944, § 12, p. 3259), well before the dates of his offenses.

### C. *Competence of Appellate Counsel*

Huie asserts that his appointed appellate counsel was incompetent for failing to raise the issues of the legality of his arrest and his sentence enhancements. As indicated above, however, the issues are meritless. Counsel fully discharged his responsibilities as set forth in *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] and *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]. (See also *People* v. *Wende* (1979) 25 Cal.3d 436, 438, 442 [158 Cal.Rptr. 839, 600 P.2d 1071].)

### D. *Wende Review*

Because Huie's counsel filed a *Wende* brief, this court has independently reviewed the record. We conclude that there are no reasonably arguable issues to be raised on appeal.

As indicated, Officer McClellan's investigative detention of Huie was lawful; denial of his motion to suppress therefore was not error.

The trial court was required to sentence Huie consecutively pursuant to section 667.6, subdivision (d), hence no statement of reasons for consecutive sentencing was necessary.

The court stated reasons justifying the aggravated term on the Traci B. count V rape. In imposing the aggravated term on the count III in-concert rape of Kay S., the court stated that "[t]he facts are obvious why it is an aggravated term." This was not a sufficient statement of reasons. However, the court fully stated its reasons for aggravating Trudell's sentence on the count II in-concert rape of Kay S.[2] Because these facts apply with identical

---

[2]The court cited the victim's vulnerability (alone late at night in her carport) and the fact that she was kidnaped. (See Cal. Rules of Court, rules 408(a), 421(a)(3); cf. § 667.8.)

force to the count III charge against Huie, it is not reasonably probable that remand would benefit Huie. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see *People* v. *Wright* (1982) 30 Cal.3d 705, 714 [180 Cal.Rptr. 196, 639 P.2d 267]; *id.*, at p. 719 [Bird, C. J., dis. but in agreement on this point]; *People* v. *Skenandore* (1982) 137 Cal.App.3d 922 [187 Cal.Rptr. 368].) The court's failure to state its reasons for aggravating Huie's count III sentence thus is not a reasonably meritorious issue to argue on his behalf. (*People* v. *Johnson* (1981) 123 Cal.App.3d 106, 109 [176 Cal.Rptr. 390].)

III

*Trudell's Appeal*

A. *His Arrest*

 Relying on *Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371] and *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333], appellant Trudell contends that the trial court erred in not suppressing his postarrest statements because the police unlawfully ordered him out of the house without a warrant. *Payton* and *Ramey* establish that in the absence of exigency or consent, police may not make a warrantless entry into a residence to effect a felony arrest. (*Payton* v. *New York, supra,* 445 U.S. at p. 576 [63 L.Ed.2d at pp. 644-645]; *People* v. *Ramey, supra,* 16 Cal.3d at pp. 274-275.) Appellant concedes that there was no entry here, but he argues that Officer Duthler's order to exit the house violated the *Payton-Ramey* privacy rationale.

In the case at bar, the arresting officer approached the front door of appellant's residence, loudly knocked on the door, and ordered appellant to come outside. Appellant gave no verbal response and remained inside the residence. The officer then made three or four announcements over a patrol car's public address system calling out appellant's name, ordering him to come outside and warning him to keep his hands in plain view. When this occurred, five officers had arrived at the scene and some had their weapons drawn.

We agree with respondent that since the arrest occurred outside of appellant's residence any reliance by appellant on *Payton* and *Ramey* is unwarranted.

*Payton* v. *New York, supra,* 445 U.S. 573, 590 [63 L.Ed.2d 639, 653], prohibits police from making warrantless, nonconsensual, or nonemergency entries of residences to effect felony arrests. *People* v. *Ramey, supra,* 16

Cal.3d 263, 275, similarly proscribes warrantless police seizures of individuals inside residences absent an emergency or consent to enter. Both decisions merely hold that without a valid warrant police may not *enter* a residence to effect an arrest absent consent or an emergency; the decisions are silent regarding a defendant's decision to exit his or her residence.

The sanctity of the premises is the subject of the *Payton* court's protection. The court emphasized that "the Fourth Amendment has drawn a firm line at the entrance to the house." (*Payton* v. *New York, supra,* 445 U.S. at p. 590 [63 L.Ed.2d at p. 653].) Objects seized in unconstitutional warrantless entries thus cannot subsequently be used as evidence against the individual whose residential privacy was violated. (*Ibid.*)

"The main policy consideration behind *Ramey* is to protect the right to privacy in a private dwelling." (*People* v. *Tillery* (1979) 99 Cal.App.3d 975, 978 [160 Cal.Rptr. 650].) As the *Ramey* court stated, "we believe that the Fourth Amendment prohibits a warrantless entry into a *dwelling* . . . ." (*People* v. *Ramey, supra,* 16 Cal.3d at p. 274, quoting *Commonwealth* v. *Forde* (1975) 367 Mass. 798 [329 N.E.2d 717, 722-723], italics added.) The *Ramey* appellant's conviction was reversed because the contraband forming the basis of his conviction was seized inside his residence incident to an unconstitutional entry and resultant invalid arrest. (*Id.,* at p. 277.) Given that the police made no warrantless entry into appellant's residence, seized no evidence nor obtained his confession therein, the principles enunciated in *Payton* and *Ramey* are inapplicable to the present situation.

Appellant next contends that his decision to exit his residence was nonconsensual and therefore his arrest was invalid. Consent, however, is not a prerequisite to a valid arrest if the arrest is based on probable cause and does not require an invasion of a residence. Decisions involving analogous situations make a clear distinction between arrests effected after an illegal entry into a residence and arrests effected outside a residence even when the subject may be talked into exiting his residence.

■ Clearly, police use of subterfuge or ruse is prohibited to gain an otherwise impermissible entry of a residence. (*People* v. *Rand* (1972) 23 Cal.App.3d 579, 582 [100 Cal.Rptr. 473].) "It is well settled by both federal and state decisions that 'an entry obtained by trickery, stealth or subterfuge renders a search and seizure invalid' [citation] . . . ." (*People* v. *Reeves* (1964) 61 Cal.2d 268, 273 [38 Cal.Rptr. 1, 391 P.2d 393]; see also *People* v. *Miller* (1967) 248 Cal.App.2d 731 [56 Cal.Rptr. 865].) By contrast, post-*Ramey* decisions have upheld the use of subterfuge to trick a defendant into *leaving* a residence.

In *People* v. *Porras* (1979) 99 Cal.App.3d 874 [160 Cal.Rptr. 627], for example, a police officer, without identifying himself, falsely telephoned a warning to trick the defendants into leaving an apartment so that they could be caught in possession of controlled substances outside and arrested. The court found no *Ramey* violation and affirmed the judgment. (*Id.*, at pp. 879-880.) The *Porras* defendants' decision to exit their residence obviously cannot be portrayed as manifesting a consent to their arrest.

In *People* v. *Tillery, supra,* 99 Cal.App.3d 975, 977, two police officers in civilian clothes, who had been invited inside the defendant's residence by his girlfriend, asked the defendant to step outside "to talk." The defendant obliged the officers and was arrested when he stepped outside. Even though the defendant consented only to talk, his conviction was upheld against a *Ramey* challenge because the arrest occurred outside of his residence. (*Id.*, at pp. 979-980.)

Finally, appellant's argument assumes too much. We cannot agree that had appellant refused to exit the residence the officers axiomatically would have forcibly entered the residence. Nor can we agree that the officers would not have obtained an arrest warrant prior to any entry of appellant's residence or that insufficient exigency existed to justify a warrantless entry. ■ Appellant may have honestly believed the police intended to forcibly enter his residence; but, "[t]he fact that [appellant] may have been under a subjective misapprehension as to the officers' intent is immaterial." (*People* v. *Superior Court (Mace)* (1969) 271 Cal.App.2d 524, 529 [76 Cal.Rptr. 518].)

But even assuming *Payton* and *Ramey* were applicable, the arrest warrant requirement is excused when exigent circumstances demand immediate police action. (*Payton* v. *New York, supra,* 445 U.S. at p. 590 [63 L.Ed.2d at p. 653]; *People* v. *Ramey, supra,* 16 Cal.3d at p. 275.)

At the suppression hearing the parties focused on whether exigent circumstances justified the failure to obtain an arrest warrant. Thus, the trial court's denial of the motion to suppress implies a finding that sufficient exigency existed to excuse the warrant requirement. The evidence fully supports the trial court's finding.

■ " '[E]xigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence . . . . [I]n each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People* v. *Ramey, supra,* 16 Cal.3d 263, 276.) "[A]n important factor to be considered when determin-

ing whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 753 [80 L.Ed.2d 732, 745, 104 S.Ct. 2091, 2099].)

■ In the present case the officers were investigating a recent violent offense—the forcible kidnap and rape that very morning of a 14-year-old child; Trudell was thought to be armed and violent; his accomplice, Huie, had just been arrested and had implicated him; Trudell had no fixed address; he knew that he was wanted for a violent crime; and the arresting officers knew that he had just learned about the police interest in him.

Given the gravity of the underlying offense and the other attending circumstances, the officers reasonably believed that an immediate arrest was necessary to insure public safety and to forestall the possibility of appellant's further flight. Moreover, there was sufficient exigency to excuse the warrant requirement. (*In re Jessie L.* (1982) 131 Cal.App.3d 202, 213-214 [182 Cal.Rptr. 396]; *People* v. *Escudero* (1979) 23 Cal.3d 800, 808-811 [153 Cal.Rptr. 825, 592 P.2d 312].)

B. *His Confession*

■ But even if there were insufficient exigent circumstances and *Ramey* was violated, what consequence flows therefrom? Trudell's subsequent statement to the police was still admissible in evidence. Unlike the physical evidence seized in connection with a warrantless arrest, the defendant's subsequent statement to the police is not automatically excluded from evidence. Rather, the *Ramey* violation is simply a factor in determining whether the subsequent statement was a product of the suspect's free will in the totality of the circumstances. (*Brown* v. *Illinois* (1975) 422 U.S. 590, 603 [45 L.Ed.2d 416, 427, 95 S.Ct. 2254]; *In re Jessie L., supra,* 131 Cal.App.3d 202, 214.) As observed in *In re Reginald B.* (1977) 71 Cal.App.3d 398, 403 [139 Cal.Rptr. 465], "The teaching of *Ramey* is that a search of a residence without a search warrant, except in certain limited circumstances, may not be justified on the basis that it was incident to an arrest unless that arrest was based upon a valid warrant. The seizure of physical evidence as a result of an unreasonable search of a residence is per se an exploitation of improper police conduct for the reason that the officers' intrusion into the residence places them in a position to obtain evidence which would not otherwise be available to them. [¶] In analyzing the relationship between an allegedly invalid arrest and a subsequent confession the focus is quite different. *The admissibility of a confession depends upon the totality of the circumstances existing at the time the confession was obtained.* [Citations.] *The invalidity of an antecedent arrest becomes a factor in that totality of circumstances to be weighed along with the other circum-*

*stances* in determining whether the confession was a product of free will and an intelligent waiver of the defendant's Fifth Amendment rights." (Italics added.) These circumstances include the purpose and flagrancy of the official misconduct; the temporal proximity of the arrest and confession; the presence of intervening circumstances; and most of all, the voluntariness of the statement. (*Brown* v. *Illinois, supra,* 422 U.S. at pp. 603-604 [45 L.Ed.2d at p. 427]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 898 [135 Cal.Rptr. 786, 558 P.2d 872].)

In the case at bench the record indicates that Trudell confessed to the crimes charged on March 23, 1982, that is, a day following his arrest. The record likewise reveals that it was Trudell who initiated the contact with the police by asking John Dauzat, a jail technician, to bring him together with Dutheler, the arresting officer. Prior to starting the conversation which took place in the officer's second floor office, Dutheler advised Trudell of his rights. After conversing with the officer about his personal problems for two hours, Trudell voluntarily confessed to the offenses at approximately 5:54 p.m. on March 23. In light of this record it cannot be said that the confession was the result of exploitation of police misconduct, much less that there was an aura of coerciveness tainting appellant's confession. (*In re Jessie L., supra,* 131 Cal.App.3d at p. 214; *In re Reginald B., supra,* 71 Cal.App.3d at p. 404.) As a consequence, Trudell's confession must be held valid and admissible regardless of any alleged technical violation of *Ramey.*

The judgments are affirmed.

Channell, J., concurred.

**POCHÉ, J.**—I concur in the affirmance of the judgment of conviction as to appellant Huie; as to the affirmance of conviction of appellant Trudell, I respectfully dissent.

If the majority opinion is a correct statement of the law, then both *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333] (cert. den., 429 U.S. 929 [50 L.Ed.2d 299, 97 S.Ct. 335]), and *Payton* v. *New York* (1980) 445 U.S. 573 [63 L.Ed.2d 639, 100 S.Ct. 1371] mean very little. In these decisions, both of our Supreme Courts have announced that in the absence of exigent circumstances the Fourth Amendment of the United States Constitution prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a felony arrest. (*Payton* v. *New York, supra,* 445 U.S. at p. 576 [63 L.Ed.2d at

pp. 644-645]; *People* v. *Ramey, supra,* 16 Cal.3d at pp. 275-276.)[1] Today this court holds that armed police do not violate those constitutional prohibitions when by bullhorned orders delivered at gunpoint they force a suspect to leave his residence.

As I read the above mentioned decisions they are both rooted and rested upon a profound respect for the specific terms of the Fourth Amendment: "The right of the people to be secure in their . . . houses . . . shall not be violated." As Justice Stevens put it for the court: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Payton* v. *New York, supra,* 445 U.S. at p. 590 [63 L.Ed.2d at p. 653].) For these reasons I do not read or understand either *Ramey* or *Payton* to be narrow opinions limited in rationale or application only to mechanistic determinations of where the threshold is and which way the traffic is proceeding over that threshold. Not so the majority opinion.

Pooh-poohing Trudell's contention that his decision to leave the residence was nonconsensual, the majority reasons that Trudell is in the same legal shoes as one who has been tricked out of his home. (See *People* v. *Green* (1983) 146 Cal.App.3d 369 [194 Cal.Rptr. 128]; *People* v. *Tillery* (1979) 99 Cal.App.3d 975 [160 Cal.Rptr. 650].) In the trick and ruse case the person intends to leave, consents to leave, but would not have made that decision had he understood the facts—i.e., had he not been tricked or misled.[2] Such a situation is different in kind from forcing a person at gunpoint to leave his residence. If that is a consensual leaving then much of the case law involving consent will need to be rethought. For example, robbery by force or fear under the majority's rationale here would be classified as the voluntary giving of gifts to the would be robber with gun in hand.

Apparently recognizing that the trick cases do not quite do the trick of answering Trudell's argument that his exiting was a result of police threats at gunpoint, the majority tries an alternative. We are told that it is "immaterial" that Trudell may have honestly believed the police intended to use force. That immateriality apparently rests on my majority colleagues' lack of belief "that had appellant refused to exit [from] the residence the officers axiomatically would have forcibly entered the residence." (Majority opn., *ante,* p. 1230.) So now to be secure in one's home against police

---

[1]*Ramey* also held that such a practice violates article I, section 13 of the California Constitution. (*Id.,* at pp. 275-276.)

[2]The argument in cases such as *People* v. *Tillery, supra,* was not as to whether consent existed in fact but whether such trick-induced consent passed constitutional muster. (See, e.g., *People* v. *Tillery, supra,* 99 Cal.App.3d at pp. 980-981 (dis. opn. of Poché, J.)

violators—a security promised explicitly by the Fourth Amendment—one must be able to judge the credibility of police officers. When outside your residence police get on the public address system, call you out by name, order you out from your residence, and advise you to come out with your "hands in plain view," you should turn to your coresident like a *New Yorker* cartoon figure and giggle "It's just the Fremont Police Department. The Court of Appeal tells me they never mean what they threaten."

Can it be seriously imagined that the majority's rationale would apply if after hearing the police orders to exit Trudell had opened the door and the police had entered and arrested him? Does the application of the Fourth Amendment's protection to the security of one's home depend on whether the police threaten their way in or threaten you out? If that is now the law then constitutional rights depend upon the direction of traffic at or near the threshold. In my view, the high courts have put a stop sign facing both directions.

The majority also rests its judgment of affirmance on the alternative ground of exigency. Of course, the Fourth Amendment's protection of the security of one's dwelling does not apply in emergency circumstances (*Payton* v. *New York, supra,* 445 U.S. at p. 576 [63 L.Ed.2d at pp. 644-645]; *People* v. *Ramey, supra,* 16 Cal.3d at pp. 275-276), but no such exigency[3] existed here.

Trudell became a suspect at 1:30 p.m. At that time the police had his name, picture and a general description of the car he was believed to be in. They also had been told that Trudell was with Huie and they knew Huie's address. At 3:45 p.m. Huie was arrested and told the officers that Trudell was his coparticipant in the crimes of that morning. Huie also told them where Trudell was living. It is not surprising then that by 4:30 p.m. the officers believed that they had probable cause to arrest Trudell. Then for about an hour, five armed policemen waited for Trudell to return to his residence. During all of that time the police had probable cause to arrest Trudell, they knew they had probable cause to arrest him, they knew where he was living and they intended to arrest him. Commendably, the arresting officer admitted all of this in his testimony and also candidly admitted that even in his mind no exigent circumstances existed until the end of that

---

[3]The *Ramey* court explained exigent circumstances as follows: "In this context, 'exigent circumstances' means an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence. There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*Id.,* at p. 276; accord *People* v. *Ellers* (1980) 108 Cal.App.3d 943, 950 [166 Cal.Rptr. 888].)

period. Thus for at least three and one-half hours before the arrest all during daylight hours, during which time probable cause existed in abundance, no reason appears from this record why an arrest warrant could not have been easily obtained.

On these facts, therefore, there is no way that Trudell's arrest can fairly be characterized as being an "emergency situation requiring swift action" by the police. (*People* v. *Ramey, supra,* 16 Cal.3d at p. 276; see fn. 3, *ante.*)

Nor can I join my colleagues' factual determination that Trudell's statement was voluntary. The trial court's decision denying Trudell's motion to suppress was grounded solely on the *Ramey-Payton* question; no evidence whatsoever was presented to the trier of fact on whether Trudell's statement was or was not voluntary. Thus the trial court made no factual findings on the question. Without such factual guidance by the trier of fact, this court is powerless to jump in and decide the question.

For these reasons I conclude that the motion to suppress the fruits of this arrest (i.e., the statements Trudell gave police after arrest) was erroneously denied, and because a plea of guilty was then entered the judgment must be reversed. (*People* v. *Miller* (1983) 33 Cal.3d 545, 553-556 [189 Cal.Rptr. 519, 658 P.2d 1320]; *People* v. *Rios* (1976) 16 Cal.3d 351, 357-359 [128 Cal.Rptr. 5, 546 P.2d 293].) Unless this is done, the protections of the Fourth Amendment delineated by the California and United States Supreme Courts in *People* v. *Ramey* and *Payton* v. *New York* become at most papier-mache guarantees that can be blown away by any police bullhorn.

The petition of appellant Trudell for review by the Supreme Court was denied January 23, 1986. Bird, C. J., and Grodin, J., were of the opinion that the petition should be granted.