[No. B103203. Second Dist., Div. Seven. June 2, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
ABRAHAM GONZALEZ, Defendant and Appellant.

[No. B116738. Second Dist., Div. Seven. June 2, 1998.]

In re ABRAHAM GONZALEZ on Habeas Corpus.

## COUNSEL

Mary Holbrook, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, Allison H. Ting, Michael J. Egan and Kyle S. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—In this case the defendant confessed to a robbery after he was arrested without probable cause. Following this confession, and while he was still in custody, police officers from another jurisdiction obtained his confession to other crimes. The issue is whether the confession to a crime other than the one for which the defendant was illegally arrested, to officers

from a different police agency who were unaware of the circumstances of the defendant's arrest, is sufficiently attenuated from the illegal arrest to dissipate its taint. We hold that under the circumstances described an otherwise valid confession to the second crime is not made inadmissible by the initial illegality of the defendant's arrest.

## FACTS AND PROCEEDINGS BELOW

We give a brief overview of the facts and proceedings below, leaving a more detailed examination to our discussion of the issues below.

Two men dressed in ski masks robbed Paul's Kitchen, a restaurant in Monterey Park. One of them shot and wounded three restaurant employees. The witnesses believed one man was Black and the other Hispanic. The men escaped in a dark blue compact car driven by a third man.

Three days later, one man wearing a ski mask and one man wearing a bandanna robbed Mac's Liquor in West Covina. Again the men escaped in a small blue car driven by another. A witness gave police a description of the getaway car and its license number. The description of the car was similar to the one used in the Paul's Kitchen robbery.

Nine days after the Mac's Liquor robbery, an Alhambra police officer stopped a car for having no front license plate. A check on the license number, taken from the rear plate, showed the car was suspected of having been used in a West Covina robbery. The four occupants, including defendant Gonzalez, were detained at gunpoint until West Covina police arrived. They were then placed under arrest and transported to the West Covina police station.

While in custody and after being given his *Miranda* warnings, defendant confessed to the Mac's Liquor robbery. The next day detectives from the Monterey Park Police Department interviewed defendant at the West Covina jail. After being *Mirandized*, defendant confessed to robbing Paul's Kitchen and shooting the three employees.

Defense counsel did not move to suppress defendant's confessions.

A jury found defendant guilty of three counts of attempted murder, two counts of robbery, and one count each of burglary, assault with a firearm and conspiracy arising out of the Paul's Kitchen case and one count of robbery arising out of the Mac's Liquor case.

Defendant contends on appeal his trial attorney provided ineffective assistance by failing to move to suppress his confessions on the ground they were

the result of an illegal arrest. He also contends the trial court erred in admitting the hearsay statements of a coparticipant in the crimes and in giving the 1994 revised version of CALJIC No. 2.90 on reasonable doubt. Defendant has also filed a petition for writ of habeas corpus in which he reasserts his claim of ineffective assistance of counsel and supplies the police reports his trial counsel reviewed in deciding not to make a motion to suppress. We issued an order to show cause on the habeas corpus petition and ordered it be considered together with the appeal.

We conclude trial counsel's failure to move to suppress defendant's confessions constituted ineffective assistance of counsel but this failure was prejudicial only as to the Mac's Liquor confession because a motion as to the Paul's Kitchen confession would have been denied. Rejecting defendant's other claims of error, we reverse the judgment as to the Mac's Liquor robbery and in all other respects affirm.

## DISCUSSION

I. *Failure to Move to Suppress the Confessions Constituted Ineffective Assistance of Counsel but Defendant Was Prejudiced Only as to the Mac's Liquor Confession.*

To succeed on a claim of ineffective assistance of trial counsel, a defendant must show "(1) counsel's representation was deficient in falling below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation subjected the [defendant] to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the [defendant]." (*In re Neely* (1993) 6 Cal.4th 901, 908 [26 Cal.Rptr.2d 203, 864 P.2d 474].)

In the context of a potential pretrial motion counsel has a duty to research the law, investigate the facts and make the motion in circumstances where a diligent and conscientious advocate would do so. (*In re Neely, supra,* 6 Cal.4th at p. 919; *People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) This does not mean counsel has to be absolutely convinced the motion, if made, would be granted nor that the motion, if granted, would result inexorably in the defendant's acquittal. (*People v. Farley* (1979) 90 Cal.App.3d 851, 864-865 [153 Cal.Rptr. 695, 12 A.L.R.4th 301]; cf. *People v. Pope, supra,* 23 Cal.3d at p. 425, fn. 15.) The motion need only be meritorious.[1] (*People v. Mattson* (1990) 50 Cal.3d 826, 876 [268 Cal.Rptr. 802, 789 P.2d 983].)

---

[1]Obviously, trial counsel has no duty to make a frivolous motion. There may be cases, however, where for tactical reasons counsel foregoes making a motion even though the

To establish prejudice, however, the defendant must do more than show the motion would have been meritorious. When the alleged deficiency is the failure to make a suppression motion, the defendant must show, in addition, the motion would have been successful. (*People* v. *Grant* (1988) 45 Cal.3d 829, 864-865 [248 Cal.Rptr. 444, 755 P.2d 894].)

In the present case, defendant contends his trial counsel should have made a pretrial motion to suppress his confessions to the robbery at Mac's Liquor and the robberies and shootings at Paul's Kitchen on the ground both confessions were irrevocably tainted by his illegal arrest. To assess the validity of this contention we need to consider: (A) whether defendant's arrest was unlawful; (B) the showing a defendant must make to suppress a confession following an illegal arrest; (C) whether, based on the law and the information available at the time, a reasonably competent attorney would have moved to suppress defendant's confessions; (D) whether such a motion would have been successful; and (E) whether a successful motion to suppress the confessions would have resulted in an outcome more favorable to the defendant.

A. *West Covina Police Lacked Probable Cause to Arrest Defendant.*

We first examine the circumstances surrounding defendant's arrest by the West Covina Police Department in the early morning hours nine days after the Mac's Liquor robbery.

At approximately 1:30 a.m. Officer Knight of the Alhambra Police observed a blue Hyundai in the parking lot of a closed gas station. Knight effected a stop of the Hyundai because it had no front license plate. When he ran a check on the numbers from the rear license plate he learned the car was suspected of having been used nine days earlier in a robbery in West Covina and the suspects were a Black male and a Hispanic male. Based on this information Knight ordered the four occupants out of the car and held them at gunpoint until backup officers arrived. One of the occupants was Mike Avila, the registered owner of the car; another was Gonzalez, the defendant in this case. A search of the occupants revealed no weapons, contraband or evidence of a robbery. A bullet casing was found in the car.

Officer Pearman of the West Covina Police Department arrived on the scene a short time later and arrested defendant, Avila and the other two occupants of the car. Defendant was transported in a police car to the West

motion has merit. (See, e.g., *United States* v. *Moore* (D.C. Cir. 1976) 554 F.2d 1086, 1089 [180 App.D.C. 227] [decision not to move to suppress motivated by desire not to tip off prosecution witness to impeaching evidence].)

Covina police station where he was booked and jailed. Asked why he took defendant into custody, Pearman responded: "The vehicle, we suspected, was involved in a robbery and we wanted to question the individuals regarding the robbery . . . ." Pearman also testified defendant was arrested because he was in the car that fit the description of the getaway car in the Mac's Liquor robbery. He conceded he had no particularized description of the perpetrators in terms of hairstyle, complexion, voice or other specific information.

Defendant concedes the initial detention was lawful. Officer Knight had good cause to stop Avila's car for lack of a front license plate and, once he learned the car had been used in an armed robbery, he acted properly in detaining the occupants and searching them and the car for weapons, contraband and evidence of the crime.[2]

■ Officer Pearman's conduct, however, is a different matter. Once he determined Avila was the registered owner of the car, he had no basis for continuing to detain defendant, much less arrest him. Other than being a male Hispanic there was nothing to connect defendant to the Mac's Liquor robbery. Although defendant was a passenger in the suspected getaway car, the robbery had occurred nine days earlier. A search of the car and defendant revealed no evidence associating him with the crime. The robbery was committed by two, possibly three, persons but there were four occupants of Avila's car when it was stopped.

Arrests made without probable cause "in the hope that something might turn up" are unlawful under the Fourth and Fourteenth Amendments. (*Brown v. Illinois* (1975) 422 U.S. 590, 605 [95 S.Ct. 2254, 2262-2263, 45 L.Ed.2d 416]; accord, *Dunaway v. New York* (1979) 442 U.S. 200, 216 [99 S.Ct. 2248, 2258-2259, 60 L.Ed.2d 824].) For example, in *In re Dung T.* (1984) 160 Cal.App.3d 697 [206 Cal.Rptr. 772] four young Vietnamese males robbed a family in its home and drove away in a Dodge. Two nights later police stopped a Dodge occupied by eight young Vietnamese males. The officers " 'loaded up the occupants, put them in police cars, transported them to the police facility and transported the car down.' " (*Id.* at p. 705.) At the police station the suspects were placed in a lineup and one of the victims identified appellant as the driver of the Dodge getaway car. The trial court denied appellant's motion to suppress evidence of his identification. The Court of Appeal held the motion should have been granted on the ground

---

[2]In the return to the habeas corpus petition, the People contend Knight had probable cause to arrest Gonzalez for "tagging," i.e., painting graffiti on public or private property. No evidence to support this contention appears anywhere in the record. Nor did Knight ever claim to have made such an arrest.

appellant's detention at the station amounted to an arrest and ". . . there was no probable cause to arrest appellant for the robberies." (*Id.* at p. 713.) The court reasoned: "The police had no detailed descriptions of the robbers other than their ages and nationalities. There were eight people occupying the car when it was stopped, but only six people were involved in the robbery. Thus at the time of the stop the police did not have probable cause to believe any one of the occupants of the car, including appellant, was guilty of the robberies." (*Ibid.*)

The facts in the present case are even further removed from probable cause than those in *In re Dung T.* Here the police did not have the general ages of the suspects, only their race. The robbery took place *nine* days earlier, not two. There were four occupants of the car when it was stopped but only two or possibly three people were involved in the Mac's Liquor robbery.[3] Thus, at the time defendant was arrested the police did not have probable cause to believe he participated in the robbery.

### B. To Suppress Evidence of His Confessions, Defendant Must Establish His Confessions Resulted From Police Exploitation of His Illegal Arrest.

The purpose of the exclusionary rule in Fourth Amendment cases, of course, is to deter the police from engaging in unlawful searches and seizures. (*Brown* v. *Illinois, supra,* 422 U.S. at pp. 602-603 [95 S.Ct. at pp. 2261-2262].) Arguably, this purpose could be accomplished by a per se or "but for" rule which simply excluded any confession which would not have been obtained but for the defendant's unlawful arrest. The Supreme Court rejected such a rule, however, because it recognized some persons may decide to confess as an act of free will unaffected by the illegality of their arrest. (*Id.* at p. 603 [95 S.Ct. at pp. 2261-2262].) As Justice Powell pointed out in his concurring opinion, ". . . the police normally will not make an illegal arrest in the hope of eventually obtaining such a truly volunteered statement." (*Id.* at p. 610 [95 S.Ct. at p. 2265].) Instead of a per se or "but for" rule, "[t]he question whether a confession is the product of a free will . . . must be answered on the facts of each case." (*Id.* at p. 603 [95 S.Ct. at p. 2261].)

In *Brown,* the court considered the effect of an unlawful arrest on the admissibility of a confession made after a *Miranda* warning was given and a

---

[3] In *People* v. *Soun* (1995) 34 Cal.App.4th 1499, 1524-1526 [40 Cal.Rptr.2d 822], relied on by the People, the defendant was a passenger in a car matching the description of the car used in the crime *one day* after the crime was committed, the number of persons in the car matched the number of persons involved in the crime, and articles of clothing worn by the persons in the car matched descriptions given by witnesses to the crime. The court found "[t]he facts known to the police in this case gave substantially more basis for [probable cause] than did the facts in *In re Dung T.* . . . ." (*Id.* at p. 1525.)

waiver obtained. Brown was arrested without a warrant and without probable cause for the purpose of questioning him about an ongoing criminal investigation. (422 U.S. at p. 592 [95 S.Ct. at p. 2256].) Following his arrest he was transported to the police station where he was placed in an interrogation room. After receiving and waiving his *Miranda* rights, he was questioned for approximately two hours until he made incriminating statements. (*Id.* at pp. 594-595 [95 S.Ct. at pp. 2257-2258].) His pretrial motion to suppress these statements was denied and he was found guilty. The issue before the Supreme Court was whether Brown's statements "were to be excluded as the fruit of the illegal arrest or were admissible because the giving of the *Miranda* warnings sufficiently attenuated the taint of the arrest." (*Id.* at pp. 591-592 [95 S.Ct. at p. 2256].)

 Holding Brown's statements must be suppressed, the court rejected the state's argument the giving of a *Miranda* warning necessarily purges the taint of an illegal arrest and renders the defendant's statements admissible. "The *Miranda* warnings are an important factor," the court acknowledged, "[b]ut they are not the only factor to be considered" because "[t]hey cannot assure in every case that the Fourth Amendment violation has not been exploited." (422 U.S. at p. 603 [95 S.Ct. at p. 2261].) Therefore, in addition to the *Miranda* warning, a court should consider "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances [and] particularly, the purpose and flagrancy of the official misconduct[.]" (422 U.S. at pp. 603-604 [95 S.Ct. at pp. 2261-2262], fns. omitted; *People* v. *Boyer* (1989) 48 Cal.3d 247, 268-269 [256 Cal.Rptr. 96, 768 P.2d 610].) We discuss each of these factors in part I.D., *post*.

C. *Based on the Law and the Information Available at the Time, a Reasonably Competent Attorney Would Have Moved to Suppress Defendant's Confessions.*

Defendant's trial counsel has filed a declaration in the habeas corpus proceeding which states: "In the course of my representation of appellant, I reviewed all police and investigative reports in the case, including those relating to appellant's arrest and subsequent confession. . . . I was aware that the case against appellant hinged on his confession. However, I did not seek to suppress that confession as the fruit of the poisonous tree on the basis of the illegality of appellant's detention and arrest. It was my legal opinion and conclusion that appellant's detention and arrest were not illegal and that the police had sufficient probable cause to detain and arrest him." Defense counsel also supplied appellate counsel with copies of the police reports he reviewed. These documents are part of the record in the habeas corpus proceeding.

In assessing trial counsel's performance we are not looking for perfection. A defendant is no more entitled to error-free representation than to an

error-free trial. (*People* v. *Farley*, *supra*, 90 Cal.App.3d at p. 858.) Nor are we simply second-guessing trial counsel's judgment or tactical decisions. (*People* v. *Holt* (1997) 15 Cal.4th 619, 703 [63 Cal.Rptr.2d 782, 937 P.2d 213]; *In re Lower* (1979) 100 Cal.App.3d 144, 149 & fn. 3 [161 Cal.Rptr. 24].) ■ Nevertheless, based on the police reports available to defense counsel and the testimony of the officers at trial, which we assume would have been their testimony at a suppression hearing, we are compelled to find trial counsel failed to make a meritorious motion to suppress defendant's confessions.

For the reasons explained in part I.A., *ante*, we disagree with counsel's assessment of the legality of defendant's arrest. The record shows the only connection between defendant and a suspect in the Mac's Liquor robbery was that defendant was Hispanic and a passenger in a car apparently used in those crimes. Even if counsel did no legal research at all, common sense would suggest these facts were arguably insufficient to establish probable cause. Furthermore, *In re Dung T.*, *supra*, 160 Cal.app.3d 697, and *People* v. *Soun*, *supra*, 34 Cal.App.4th 1499, clearly would have supported a motion to suppress.

Because counsel erroneously concluded defendant was lawfully arrested he did not consider whether defendant's confessions were the result of exploitation of his illegal arrest. However, any attorney passingly familiar with *Brown* v. *Illinois* would realize the mere fact defendant was Mirandized before he confessed did not purge the taint of the illegal arrest and there were fertile grounds for a suppression motion based on the length of time between defendant's arrest and his confessions, the absence of intervening circumstances and the purpose and flagrancy of police misconduct. (See discussion in pt. I.D., *post*.)

### D. *A Motion to Suppress Would Have Properly Been Granted as to the Mac's Liquor Confession but Not to the Paul's Kitchen Confession.*

■ As previously noted, the Supreme Court in *Brown* v. *Illinois* identified four factors a court should consider in determining whether a defendant's confession was the product of free will or the result of exploiting an illegal arrest. Those factors are: the giving of a *Miranda* warning, the temporal proximity of the arrest and confession, the presence of intervening circumstances and the purpose and flagrancy of the official misconduct. (422 U.S. at pp. 603-604 [95 S.Ct. at pp. 2261-2262].) We discuss each of these considerations in more detail and then apply them to the facts of this case.

#### (1) *Importance of Miranda warning.*

While the Supreme Court acknowledged the fact the defendant was *Mirandized* is an "important factor" in determining whether his confession

should be suppressed in *Brown* v. *Illinois, supra,* 422 U.S. at page 603 [95 S.Ct. at page 2261], it is by no means conclusive. As the court pointed out in a subsequent case, if no *Miranda* warning was given the confession could be suppressed on that ground and the Fourth Amendment issue would not have to be reached. (*Dunaway* v. *New York, supra,* 442 U.S. at p. 217 [99 S.Ct. at p. 2259].) More importantly, in *Brown*-type situations the court is not concerned with whether the confession was voluntary in the Fifth Amendment sense but with whether the confession should be excluded in order to deter police officers from making unlawful arrests. (*Brown, supra,* 422 U.S. at pp. 601-602 [95 S.Ct. at pp. 2260-2261].) "If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted." (*Id.* at p. 602 [95 S.Ct. at p. 2261].)

Applying the fundamental legal maxim, where the reason stops so stops the rule,[4] the *Brown* court concluded the more attenuated the confession is from the unlawful arrest—that is the more the confession is the product of the defendant's free will and the less it is the product of the initial illegality—the less effect suppressing the confession will have on deterring unlawful arrests. (*Brown* v. *Illinois, supra,* 422 U.S. at p. 602 [95 S.Ct. at p. 2261].) Thus *Miranda* warnings are relevant to the question of whether a confession should be suppressed on Fourth Amendment grounds only to the extent they are evidence the confession was an act of free will on the part of the defendant sufficient to purge the primary taint of the unlawful arrest. (*Id.* at p. 599 [95 S.Ct. at pp. 2259-2260].)

(2) *Temporal proximity of the arrest and the confession.*

The temporal proximity factor has been described as "ambiguous" (*Lozoya* v. *Superior Court* (1987) 189 Cal.App.3d 1332, 1341 [235 Cal.Rptr. 77]) and " 'the least determinative factor' " (5 LaFave, Search and Seizure (3d ed. 1996) § 11.4(b), p. 259).

This criticism stems from the fact the temporal proximity between the unlawful arrest and the confession can cut both ways. If the time span is short—a few minutes to a few hours—it can be argued this is evidence of exploitation of the illegal arrest because there was not enough time for intervening factors to take hold and break the causal chain. (*Brown* v. *Illinois, supra,* 422 U.S. at p. 604 [95 S.Ct. at p. 2262] [two hours between illegal arrest and statement; no intervening events; statements suppressed].) On the other hand, it can be argued a short time span between the illegal

---

[4]See Civil Code section 3510.

arrest and confession shows the confession was independent from the arrest and resulted from the defendant's free will—that he knew he was guilty and only needed the right opportunity to confess. (See *Dunaway* v. *New York*, *supra*, 442 U.S. at p. 220 [99 S.Ct. at pp. 2260-2261] (conc. opn. of Stevens, J.); and see 5 LaFave, Search and Seizure, *supra*, § 11-4(b), at p. 266 and cases cited therein.) If the time span is long—a day or more—it can be argued this is evidence the confession was independent from the arrest and resulted from the defendant's free will because whatever shock and trauma the initial arrest and custody caused had likely worn off by then. (*People* v. *Trudell* (1985) 173 Cal.App.3d 1221, 1232 [219 Cal.Rptr. 679] [confession on following day not tainted by illegal arrest].) On the other hand, it can be argued a long time span between the illegal arrest and confession is evidence of exploitation of the illegal arrest because the illegal custody becomes more oppressive the longer it continues. (*Dunaway* v. *New York*, *supra*, 442 U.S. at p. 220 [99 S.Ct. at pp. 2260-2261] (conc. opn. of Stevens, J.).)

LaFave concludes the temporal proximity factor is useless in determining whether the taint of an illegal arrest has dissipated unless it is considered in connection with the presence of intervening circumstances. (5 LaFave, Search and Seizure, *supra*, § 11.4(b) at p. 259 and cases cited therein.) The case law supports this conclusion. (Compare *Brown* v. *Illinois*, *supra*, 422 U.S. at p. 604 [95 S.Ct. at p. 2262] and *In re Jorge S.* (1977) 74 Cal.App.3d 852, 860 [141 Cal.Rptr. 722] [confessions suppressed where obtained less than two hours following illegal arrest and no intervening circumstances] with *Rawlings* v. *Kentucky* (1980) 448 U.S. 98, 107-108 [100 S.Ct. 2556, 2562-2563, 65 L.Ed.2d 633] [confession not suppressed where obtained forty-five minutes after illegal arrest but intervening circumstances] and *People* v. *Trudell*, *supra*, 173 Cal.App.3d at p. 1232 [confession not suppressed where obtained day following illegal arrest but intervening circumstances].)

### (3) *The presence of intervening circumstances.*

Intervening circumstances can be anything the court deems sufficient to "break the causal chain . . . between the illegal arrest and the statements made subsequent thereto." (*Brown* v. *Illinois*, *supra*, 422 U.S. at p. 602 [95 S.Ct. at p. 2261].)

In *Rawlings* v. *Kentucky*, *supra*, 448 U.S. 98, the suspects were unlawfully detained for only 45 minutes before one of them confessed to possession of illegal drugs. The court observed: "[U]nder the strictest of custodial conditions such a short lapse of time might not suffice to purge the initial taint [of the unlawful arrest]." (448 U.S. at p. 107 [100 S.Ct. at p. 2563].) Here, however, the suspects were detained at home, not at a police station or jail,

and were allowed to play with a puppy, put on records and make coffee. (*Id.* at p. 108 [100 S.Ct. at p. 2563].) These circumstances, the court concluded, "outweigh the relatively short period of time that elapsed between the initiation of the detention and petitioner's admissions." (*Ibid.*) In *Dunaway* v. *New York, supra,* 442 U.S. 200, Justice Stevens suggested in a concurring opinion that even where there is a short time span between the unlawful arrest and the confession the causal chain may be broken by an intervening event such as a visit with a minister. (442 U.S. at p. 220 [99 S.Ct. at pp. 2260-2261] (conc. opn. of Stevens, J.).) In *Taylor* v. *Alabama* (1982) 457 U.S. 687, 691 [102 S.Ct. 2664, 2667-2668, 73 L.Ed.2d 314], however, Justice Stevens joined four other members of the court in holding the causal chain was not broken by a ten-minute meeting between the defendant, his girlfriend and a male companion after which defendant immediately confessed. Nor was the *Taylor* majority impressed by the fact defendant spent most of the six hours between his arrest and his confession by himself as opposed to being subjected to continuous interrogation. (*Id.* at p. 700 [102 S.Ct. at p. 2672] (dis. opn. of O'Connor, J.).)

In *People* v. *Trudell, supra,* 173 Cal.App.3d at page 1232, where the defendant confessed after being held in jail for a day, the majority held the causal chain was broken in part by the facts defendant asked to see the arresting officer and they conversed about defendant's personal problems for two hours before defendant confessed to the crimes. (For other examples of intervening circumstances see 5 LaFave, Search and Seizure, *supra,* § 11-4(b), at pp. 263-268.)

(4) *The purpose and flagrancy of the police misconduct.*

In *Brown, Dunaway* and *Taylor* the police arrested the defendants without probable cause and interrogated them in the hope "something would turn up." (*Brown* v. *Illinois, supra,* 422 U.S. at p. 605 [95 S.Ct. at p. 2262]; *Dunaway* v. *New York, supra,* 442 U.S. at p. 218 [99 S.Ct. at pp. 2259-2260]; *Taylor* v. *Alabama, supra,* 457 U.S. at pp. 690-691 [102 S.Ct. at pp. 2666-2668].) The Supreme Court found such police conduct to be a particularly flagrant abuse of power because it "intrudes so severely on interests protected by the Fourth Amendment." (*Dunaway* v. *New York, supra,* 442 U.S at p. 216 [99 S.Ct. at p. 2258.)

In *Brown,* the police surprised the defendant as he approached his apartment, held him at gunpoint, ordered him to stand against the wall and searched him. They then placed him under arrest, handcuffed him, placed him in a squad car and drove him to the police station. (422 U.S. at p. 593 [95 S.Ct. at p. 2256-2257].) The court observed "[t]he manner in which

Brown's arrest was effected gives the appearance of having been calculated to cause surprise, fright and confusion." (*Id.* at p. 605 [95 S.Ct. at p. 2262].) However, the flagrancy of police misconduct is not measured by how polite the police are to the defendant just before or after his illegal arrest. None of the drama of *Brown* was present in *Dunaway*. There the defendant was located at a neighbor's house and quietly taken into custody and driven to police headquarters where he was questioned by officers after being *Mirandized.* (442 U.S. at p. 203 [99 S.Ct. at pp. 2251-2252].) The court rejected the state's argument *Brown* was distinguishable on the ground the police did not threaten or abuse Dunaway. "Once at the police station," the court noted, "Brown was taken to an interrogation room, and his experience was indistinguishable from [Dunaway's]." (*Id.* at p. 216 [99 S.Ct. at p. 2258].) Furthermore, the court stated, the state's argument "betrays a lingering confusion between 'voluntariness' for purposes of the Fifth Amendment and the 'causal connection' test established in *Brown*. Satisfying the Fifth Amendment is only the 'threshold' condition of the Fourth Amendment analysis required by *Brown*." (*Id.* at p. 219 [99 S.Ct. at p. 2260].) The details of the arrest in *Taylor* are sketchy. The opinion only informs us the police arrested Taylor without probable cause, searched him and took him to the station for questioning. (457 U.S. at p. 689 [102 S.Ct. at p. 2666].) The opinion does state, however, "This case is a virtual replica of both *Brown* and *Dunaway* [in that defendant] was arrested without probable cause in the hope that something would turn up, and he confessed shortly thereafter without any meaningful intervening event." (*Id.* at pp. 690-691 [102 S.Ct. at p. 2667].) By describing *Dunaway* and *Taylor* as "replicas" of *Brown*, the court was making clear the flagrant misconduct which triggers the exclusionary rule is not causing the arrestee "surprise, fright and confusion" but arresting a person without probable cause in the hope that upon interrogation "something will turn up."

■ Applying these factors to the Mac's Liquor confession it is clear a motion to suppress should have been granted.

Detective Volz of the West Covina Police Department testified he arrived at the jail where defendant was being held at approximately 4 a.m. on the morning of defendant's arrest. He began by interviewing other men who had been arrested along with defendant. He stated he met with defendant at approximately 5 a.m. although it could have been as late as 6:30 or 7 a.m. Volz advised defendant of his *Miranda* rights which defendant waived. He then began asking defendant about the Mac's Liquor robbery. After initially denying any involvement, defendant confessed to the robbery. Volz testified he put no pressure on defendant and the interview only lasted approximately 45 minutes.

Defendant's confession was separated from his illegal arrest by as little as three and a half hours and by as much as five and a half hours beginning at 1:30 in the morning. Both time periods fall within the range that suggests the confession did not result from an intervening independent act of free will. (Cf. *Taylor* v. *Alabama, supra,* 457 U.S. at pp. 690-692 [102 S.Ct. at pp. 2666-2668.] [six hours]; *Brown* v. *Illinois, supra,* 422 U.S. at p. 604 [95 S.Ct. at p. 2262] [two hours]; *People* v. *Boyer, supra,* 48 Cal.3d at p. 269 [four hours].)

The record discloses no intervening events which might have broken the chain between defendant's illegal arrest and his subsequent confession to the Mac's Liquor robbery. On the contrary, he remained in police custody and police company from the time of his arrest to the time he confessed. As previously noted, where no intervening circumstances are present a long and illegal detention may itself impel the defendant to confess. (*Dunaway* v. *New York, supra,* 442 U.S. at p. 220 [99 S.Ct. at pp. 2260-2261] (conc. opn. of Stevens, J.).) The fact Volz did not place any additional pressure on defendant merely suggests he did not need to. (Cf. *Dunaway* v. *New York, supra,* 442 U.S. at pp. 218-219 [99 S.Ct. at pp. 2259-2260] [fact police did not threaten or abuse defendant not an intervening event demonstrating voluntariness of confession].)

The most damning factor, however, is the utter lack of probable cause for defendant's arrest and the very clear indication its purpose was to take defendant into custody and see what might turn up. West Covina Police Officer Pearman, who made the arrest, admitted as much when asked why the defendant and the others were arrested: "Basically, the vehicle we suspected was involved in a robbery *and we wanted to question the individuals regarding the robbery.*"

Therefore, had a motion been made to suppress defendant's confession to the Mac's Liquor robbery it would have been granted. By not making such a motion, defendant's trial attorney denied defendant the effective assistance of counsel.

■ Defendant's confession to the Paul's Kitchen shootings and robberies, however, stands on a different footing.

Later on the day of defendant's arrest, the Monterey Park detectives investigating the Paul's Kitchen case, Gianonne and Smith, received word several individuals had been arrested by the West Covina Police for a robbery and the vehicle in which they had been riding matched the description of the one used in the Paul's Kitchen crimes. The officers decided to

follow up on this lead and the following day they went to the West Covina jail to interview defendant and the others arrested with him. Defendant was advised of his *Miranda* rights and agreed to speak to Giannone and Smith about the Paul's Kitchen crimes. He confessed to these crimes during the course of the interview.

Nothing in the record suggests that when the West Covina Police arrested defendant for the Mac's Liquor robbery they knew anything about the Paul's Kitchen robberies and shootings in Monterey Park or that the car in which defendant had been riding might have been used in another crime. Likewise, nothing in the record suggests the Monterey Park officers were acquainted with the circumstances leading to defendant's arrest by the West Covina Police.

Thus, the issue with respect to the Paul's Kitchen confession is whether the confession to a crime other than the one for which the defendant was illegally arrested, to officers from a different police agency who were unaware of the circumstances of the defendant's arrest, is sufficiently attenuated from the illegal arrest to dissipate its taint.

There is no California case directly on point. There are, however, two California Supreme Court opinions which imply the court would not suppress a confession under *Brown* v. *Illinois* if it was made to officers of a separate police agency unconnected with the defendant's illegal arrest and unaware of its circumstances.

In *People* v. *Beardslee* (1991) 53 Cal.3d 68 [279 Cal.Rptr. 276, 806 P.2d 1311] the court held defendant's admission, at the preliminary hearing for a codefendant, that he had committed a murder in Missouri, was admissible at defendant's trial even though Missouri police had obtained defendant's confession to the murder in violation of his Fifth and Sixth Amendment rights. Neither the California prosecutors, who interviewed defendant before his preliminary hearing testimony, nor his own attorney, knew about the taint on the Missouri confession until after defendant had testified. "An analysis of the *Brown* factors," the court stated, "convinces us that defendant's California statements were an act of free will, and any connection between them and the Missouri events was so attenuated as to dissipate the taint." (*Id.* at p. 109.) The court noted among other things defendant's California statements were preceded by *Miranda* warnings, occurred 11 years after the unlawfully obtained Missouri confession "and were taken by different authorities." (*Ibid.*) The court concluded that, on balance, defendant's California statements were acts of his free will and under the circumstances, "[s]uppression of the California confession would penalize the

California authorities and the people they serve, not the Missouri officials." (*Id.* at p. 111.)

In *People* v. *McInnis* (1972) 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690], a robbery prosecution, the court upheld the introduction into evidence of a mug shot of the defendant taken in an earlier, illegal arrest. The court explained: "[T]he illegal arrest was in no way related to the crime with which defendant was ultimately charged. Indeed, two independent agencies were involved: the robbery was being investigated by Pasadena policemen, while Los Angeles authorities made the previous illegal arrest." (*Id.* at p. 825.)

The Illinois Supreme Court was faced with the precise issue before us in *People* v. *Gabbard* (1979) 78 Ill.2d 88 [34 Ill.Dec. 751, 398 N.E.2d 574]. There, the defendant was unlawfully arrested by a state police officer. In searching through the defendant's possessions following his arrest the officer found a driver's license belonging to the victim of a recent robbery in a nearby county. A different state police officer drove defendant to the county sheriff's office where, after waiving his *Miranda* rights, he was interviewed by Deputy Sheriff Sedlak about the robbery. The defendant subsequently confessed the robbery to Sedlak. On appeal following his conviction, the Illinois Supreme Court held the illegality of the defendant's initial arrest did not render his confession inadmissible under *Brown* and *Dunaway*. The court reasoned: "The unlawful arrest of the defendant was . . . not made in the course of an investigation into the robbery or for the purpose of interrogating the defendant on that subject. Neither the arresting officer nor the governmental entity by which he was employed was investigating that crime or was responsible for doing so, and the arresting officer was not even aware that it had occurred. The interrogating officer, on the other hand, knew that the defendant was in custody [but] he did not know the circumstances leading to the defendant's arrest. We are not presented here with an attempt by police to avoid responsibility by dividing it among different individuals. . . . In the present case the purpose of the exclusionary rule, i. e., to deter improper police conduct . . . would be served minimally, if at all, by exclusion of the defendant's statements." (*Id.* at pp. 578-579.)

We agree with the reasoning in *Gabbard.* Just as a police officer normally will not make an illegal arrest in the hope of eventually obtaining an admissible confession, it is equally unlikely an officer in one police department would illegally arrest a suspect on the off chance an officer in another police department, investigating a different crime, and unaware of the illegal

circumstances of the arrest, might interrogate the suspect and obtain a confession.

In the present case, with respect to the crimes at Paul's Kitchen, the arresting and interrogating officers belonged to different police departments. There is no evidence the West Covina Police Department was investigating or cooperating in investigating the Paul's Kitchen crimes in Monterey Park or that the Monterey Park Police had sought assistance from the West Covina Police in arresting defendant for those crimes. On the contrary, Detectives Gianonne and Smith testified they had no contact with the West Covina Police Department regarding the Paul's Kitchen case until they were informed of defendant's arrest. Thus, this is not a case in which one police department or cooperating police departments attempt to make an end run around the Fourth Amendment by creating a "don't ask—don't tell" strategy in which one unit illegally arrests suspects and another unit interrogates them deliberately unaware of the circumstances of the arrest.

For these reasons a motion to suppress defendant's confession to the Paul's Kitchen robberies and shootings would have been denied. Therefore failure to make such a motion did not deprive defendant of the effective assistance of counsel.

E. *Failure to Move to Suppress the Mac's Liquor Confession Was Prejudicial.*

 Because no evidence other than his confession linked defendant to the Mac's Liquor robbery a successful motion to suppress that confession would have resulted in an acquittal on that charge. Therefore, failure to make the motion was prejudicial and the judgment must be reversed as to that count.

II. *Evidence of Mendoza's Extrajudicial Admission of Involvement in the Paul's Kitchen Crimes, Even if Erroneously Admitted, Was Not Prejudicial.*

The People theorized the shootings at Paul's Kitchen were intended to eliminate the witnesses to an earlier robbery committed by defendant's fellow gang members and the robberies were merely a means to try to cover up that intent. In support of this theory the prosecution introduced into evidence a note taken from the home of Marcos Mendoza, who the People

contended was a coparticipant in the shootings and robberies. The text of the note is set out in the footnote below.[5] The People also sought to introduce evidence of Mendoza's admission to Detective Smith he wrote the note. To overcome the hearsay rule, the People claimed Mendoza's statement was a declaration against penal interest. In order to have the statement admitted as a declaration against penal interest, the People had to establish Mendoza was unavailable as a witness. (Evid. Code, § 1230.) To establish Mendoza's unavailability as a witness, the People called him to the stand in the presence of the jury and asked him 17 questions about the case, all of which Mendoza refused to answer, as the prosecutor knew would happen. After 17 citations for contempt, the trial court finally called a halt to the questioning on the ground the questions were beginning to extend beyond the People's offer of proof. Detective Smith was allowed to testify to Mendoza's admission.

Defendant contends it was error to allow the prosecutor to "get before the jury . . . devastating direct testimony" in the guise of establishing the witness's unavailability. (See *People* v. *Rios* (1985) 163 Cal.App.3d 852, 868-869 [210 Cal.Rptr. 271].) He further contends Mendoza's statement was not a true declaration against penal interest and it was not reliable under the circumstances.

We have reviewed the questions asked of Mendoza and do not find them in any way "devastating" to defendant's denial of culpability in the Paul's Kitchen crimes. Furthermore, we find Mendoza's statement was sufficiently reliable and met the conditions for a declaration against penal interest. We need not engage in a lengthy analysis of these issues because defendant concedes even if the trial court erred, the errors would be prejudicial only if we found his confession to the Paul's Kitchen crimes should have been suppressed. Since we did not, they are not.

III. *The Reasonable Doubt Instruction Contained in the 1994 Revision of CALJIC No. 2.90 Is Not Unconstitutional.*

Finally, defendant contends the 1994 revision to the definition of reasonable doubt contained in CALJIC No. 2.90 unconstitutionally lowers the government's burden of proof. We rejected the identical argument in *People* v. *Barillas* (1996) 49 Cal.App.4th 1012, 1022-1023 [57 Cal.Rptr.2d 166].)

---

[5]The note stated: "Paul's Kitchen, two china girls, kind of old cashier, a waitress. Don't do nothing. Try to find them and try to find the third one, doesn't know if he's Mexican or Chino. . . . Talk to Snuffy and tell him what you saw. Talk to him about it."

## DISPOSITION

The order to show cause is discharged, having served its purpose, and the petition for writ of habeas corpus is denied. The judgment is reversed as to count 9. In all other respects the judgment is affirmed.

Lillie, P. J., and Neal, J., concurred.

A petition for a rehearing was denied July 2, 1998, and appellant's petition for review by the Supreme Court was denied September 23, 1998. Mosk, J., Kennard, J., and Chin, J., were of the opinion that the petition should be granted.